1

2

3

4

5

6

7

8                           **UNITED STATES DISTRICT COURT**

9                          **CENTRAL DISTRICT OF CALIFORNIA**

10

11   CHARLES GREENE,                    Case No. CV 13-04500 SS

12              Plaintiff,

13        v.                            **MEMORANDUM DECISION AND ORDER**

14   CAROLYN W. COLVIN,
     Acting Commissioner of the
15   Social Security Administration,

16              Defendant.

17

18

19                                  **I.**

20                             **INTRODUCTION**

21

22        Plaintiff Charles Greene ("Plaintiff") seeks review of the

23   final decision of the Commissioner of the Social Security

24   Administration (the "Commissioner" or the "Agency") denying his

25   applications for Disability Insurance Benefits and Supplemental

26   Security Income.  The parties consented, pursuant to 28 U.S.C.

27   § 636(c), to the jurisdiction of the undersigned United States

28   \\

1  Magistrate   Judge.      For   the   reasons   stated   below,   the

2  Commissioner's decision is AFFIRMED.

3

4                                    **II.**

5                         **PROCEDURAL HISTORY**

6

7       Plaintiff   filed   applications   for   Title   II   Disability

8  Insurance Benefits ("DIB") and Title XVI Supplemental Security

9  Income   ("SSI")   on   February   12,   2010.     (Administrative   Record

10 ("AR")   21,   118).     In   both   applications,   Plaintiff   alleged   a

11 disability onset date of December 21, 2009.   (Id.).   The Agency

12 denied Plaintiff's applications on August 26, 2010.   (AR 81).   On

13 September   14,   2010,   Plaintiff   requested   a   hearing   before   an

14 Administrative Law Judge ("ALJ").   (AR 86).   Plaintiff appeared

15 and testified at a hearing held before ALJ Edward P. Schneeberger

16 on September 8, 2011.   (AR 21, 32).   Randi Hetrick, a vocational

17 expert, also testified at the hearing.   (Id.).   On September 21,

18 2011, the ALJ issued a decision denying Plaintiff DIB and SSI.

19 (AR 28).

20

21      The Appeals Council denied Plaintiff's request for review of

22 the ALJ's decision on April 23, 2013.   (AR 1-4).   Plaintiff filed

23 the instant action on July 1, 2013.

24 \\

25 \\

26 \\

27 \\

28 \\

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### III.

### FACTUAL BACKGROUND

Plaintiff was born on May 28, 1972 and was thirty-seven years old at the time of his alleged disability onset date. (AR 27). Although Plaintiff attended high school until twelfth grade, he did not graduate. (AR 38). Plaintiff last worked full-time as a dock manager responsible for managing twenty-five to thirty employees for a delivery service company. (AR 40-41). Before being promoted to dock manager, Plaintiff worked as a truck driver for the same company. (AR 40). Earlier in his career, Plaintiff worked as a machine operator, utility specialist and car salesman. (AR 45-46). On October 1, 2008, Plaintiff was laid off as a dock manager. (AR 38, 40, 161). After losing his job, Plaintiff worked part-time as a welder's helper for approximately two to three months and a construction helper for approximately three to four months. (AR 42-43).

Plaintiff suffered a gunshot wound on December 21, 2009, (AR 35-36), and, as a result, experienced a right leg fracture and injuries to his foot. (AR 25, 199). On January 5, 2010, Plaintiff underwent surgery to place an intramedullary rod in his right tibia. (AR 25, 199, 239).

\\

\\

\\

\\

\\

**A.     Relevant Medical History**

      **1.     Medical Records**

    The record contains medical records from three health care facilities: Martin Luther King, Jr. Medical Center, Harbor-UCLA Medical Center and Hubert Humphrey Comprehensive Health Center. (AR 25-26).

    After sustaining a gunshot wound to his right leg, Plaintiff traveled to Martin Luther King, Jr. Multi-Service Ambulatory Care Center on December 22, 2009.   (AR 281, 286).   Plaintiff was diagnosed with a right tibia fracture and was transferred to Harbor-UCLA Medical Center. (AR 286).

    On December 23, 2009, Plaintiff's doctors at Harbor-UCLA Medical Center attempted a realignment of the tibial fragments in Plaintiff's leg, and Plaintiff was subsequently placed in a "long leg cast."   (AR 193).   Plaintiff's December 24, 2009 Discharge Summary[1] from Harbor-UCLA Medical Center indicated that "[t]here were two bullet wounds, one located anteriorly about mid shaft of the right tibia and a second bullet wound located posteriorly midshaft of the tibia."   (Id.).   Plaintiff was described as temporarily disabled, and his doctors did not anticipate that his

---

[1]     Although the Discharge Summary includes the names of three different physicians, (AR 193-194), it is not clear which physician(s) had primary responsibility for examining and treating Plaintiff. Furthermore, Plaintiff has not provided any evidence that any particular physician treated him on a consistent and/or continual basis.

1   disability would persist beyond March 2010.  (AR 194).  Plaintiff

2   was instructed to "[k]eep the cast dry[,]" "[u]se crutches for

3   walking[,]" "[e]levate the leg to decrease swelling and pain[,]"

4   and return to the emergency room if necessary.  (Id.).

5

6      On January 5, 2010, Plaintiff underwent surgery to repair

7   his fractured right tibia at Harbor-UCLA Medical Center, which

8   involved placing "an intramedullary nail . . . in his right

9   tibial shaft."  (AR 237, 239).  Upon his discharge from the

10   hospital, Plaintiff "was instructed to be nonweightbearing in the

11   right lower extremity, with elevation of the leg[]" and "to keep

12   the dressings clean, dry and intact."  (AR 238).  According to

13   Plaintiff's post-surgery Discharge Summary, Plaintiff's

14   disability was not expected to last beyond April 2010.  (Id.).

15

16      On September 13, 2010, Plaintiff sought treatment at Hubert

17   Humphrey Comprehensive Health Center for pain and swelling in his

18   lower right leg.  (AR 246-47).  An August 29, 2011 radiology

19   report indicated that Plaintiff showed no signs of "acute

20   fracture or dislocation."  (AR 402).  The report noted that

21   "[m]inimal degenerative change [was] present within the knee

22   joint with minimal medial compartment joint space narrowing."

23   (Id.).

24   \\

25   \\

26   \\

27   \\

28   \\

1        **2.    State Agency And Consultative Doctors**

2

3        On August 5, 2010, Plaintiff saw Dr. Saeid, a consultative

4   physician, for a Complete Internal Medicine Evaluation. (AR 200-

5   07).   As an initial matter, Dr. Saeid noted that Plaintiff

6   experienced no difficulty sitting in a chair or rising from a

7   seated position.   (AR 201).   The examination "reveal[ed]

8   tenderness in [Plaintiff's] anterior, medial and lateral

9   aspect[s] of [the] right knee[]" and "tenderness in [the] dorsal

10  aspect of the right ankle." (AR 203).   Dr. Saeid found that

11  Plaintiff "[had] left foot stance performance and [a] mildly

12  antalgic gait[,]" but was "capable of lifting and carrying

13  [twenty] pounds occasionally and [ten] pounds frequently." (AR

14  204).   Plaintiff could stand, walk and sit for six hours in an

15  eight-hour day.   (Id.).   However, "[f]or long distance

16  ambulation," Plaintiff may have required use of a cane. (Id.).

17

18       On August 16, 2010, Dr. Ahmed, a state agency physician,

19  reviewed Plaintiff's medical records and assessed Plaintiff's

20  residual functional capacity ("RFC").   (AR 215).   Dr. Ahmed found

21  that although Plaintiff showed signs of tenderness in the

22  anterior, medial and lateral aspects of the right knee, his left

23  knee range of motion was grossly normal. (AR 213).   Plaintiff's

24  knees were without effusion and showed no signs of

25  anteroposterior or mediolateral instability. (Id.).   Plaintiff's

26  records indicated tenderness in the dorsal aspect of his right

27  ankle and along the anterior aspect of his right leg. (AR 214).

28  However, x-rays taken seven months after Plaintiff's surgery

6

showed a healed fracture. (AR 215). Based on his review of these records, Dr. Ahmed concluded that Plaintiff was "doing relatively well and [was] expected to continue improvement." (Id.). Accordingly, he assigned Plaintiff a "light RFC." (Id.). Dr. Ahmed found that Plaintiff could lift and carry twenty pounds occasionally and ten pounds frequently, and stand, walk, or sit for six hours in an eight-hour day. (AR 214). Like Dr. Saeid, Dr. Ahmed concluded that Plaintiff may have required use of a cane for "long distance ambulation." (Id.).

B.  **Vocational Expert Testimony**

Vocational Expert ("VE") Randi Hetrick testified at Plaintiff's hearing before the ALJ. (AR 21). The VE testified that a hypothetical individual with Plaintiff's work experience and exertional limitations could perform Plaintiff's past work as a car salesman. (AR 55, 68). (AR 55). The VE also testified that Plaintiff could work as a cashier, office helper, order clerk or final assembler. (AR 72). However, if an individual having Plaintiff's limitations needed to elevate his legs "four times a day for one half hour per event[,]" that person would not be able to perform any job existing in the national economy. (AR 69-70).

C.  **Plaintiff's Testimony**

Plaintiff testified that he was shot in the shin, between the knee and the ankle, and that bullet fragments remain lodged

1   in his leg.  (AR 58, 65).  After May 2010, Plaintiff started to
2   use a boot brace and cane for support.  (AR 58-59).  Plaintiff
3   explained that he could move ten to twenty feet without using the
4   cane.  (AR 67).  However, sitting in one place for a long time
5   caused throbbing in his right leg.  (AR 64).  Plaintiff explained
6   that he spent most of his time in bed "with [his] leg propped
7   up."  (AR 59).  He could be on his feet for, at most, two hours
8   in an eight-hour day.  (Id.).  Plaintiff stated that he elevated
9   his leg for approximately two hours per day.  (AR 59-60).

11      Plaintiff saw a doctor approximately every three months, and
12   he visited the emergency room three times in the six months
13   leading up to the hearing before the ALJ due to pain and swelling
14   in his right leg.  (AR 56).  Although Plaintiff's pain medication
15   was initially ineffective, Plaintiff had since received stronger
16   medication that resolved his pain more effectively.  (Id.).
17   Plaintiff testified that he used pain medication three times per
18   day.  (AR 63).

20      Plaintiff testified that he had "been thinking about either
21   taking a vocational class or something . . . , within the next
22   three or four months . . . . "  (AR 57).  When asked "could you
23   do a job if you had the opportunity that would make you a lot of
24   money where you could sit down and not have to walk around so
25   much?", Plaintiff answered "Yes, I could, Your Honor."  (AR 56).
26   Plaintiff suggested that he could perform sedentary work full-
27   time if given the opportunity to do so, (AR 56, 60, 64), but also
28   testified that he may not be able to do such work on a full-time

1 basis.   (AR 64).   Plaintiff stated that he felt "a little bit

2 more comfortable" at the hearing "than [he] was [ten] . . . or

3 [twelve] months ago." (AR 67). Plaintiff confirmed that as of

4 the date of his hearing, no doctor had recommended additional

5 surgery to treat his gunshot wound or any injuries resulting

6 therefrom.   (AR 66).

7

8                                    **IV.**

9               **THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS**

10

11      To qualify for disability benefits, a claimant must

12 demonstrate a medically determinable physical or mental

13 impairment that prevents him from engaging in substantial gainful

14 activity and that is expected to result in death or to last for a

15 continuous period of at least twelve months.  Reddick v. Chater,

16 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. §

17 423(d)(1)(A).  The impairment must render the claimant incapable

18 of performing the work she previously performed and incapable of

19 performing any other substantial gainful employment that exists

20 in the national economy.  Tackett v. Apfel, 180 F.3d 1094, 1098

21 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

22

23      To decide if a claimant is entitled to benefits, an ALJ

24 conducts a five-step inquiry.  20 C.F.R. §§ 404.1520, 416.920.

25 The steps are:

26 \\

27 \\

28 \\

(1)   Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.

(2)   Is the claimant's impairment severe?  If not, the claimant is found not disabled.  If so, proceed to step three.

(3)   Does the claimant's impairment meet or equal one of the specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is found disabled.  If not, proceed to step four.

(4)   Is the claimant capable of performing his past work?  If so, the claimant is found not disabled. If not, proceed to step five.

(5)   Is the claimant able to do any other work?  If not, the claimant is found disabled.  If so, the claimant is found not disabled.

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citations omitted); 20 C.F.R. §§ 404.1520(b)-(g)(1) & 416.920(b)-(g)(1).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante, 262 F.3d at 953-54.  Additionally, the ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry.  (Id. at 954).  If, at step four, the claimant meets his burden of establishing an inability to

10

perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's RFC, age, education, and work experience. Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). The Commissioner may do so by the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids"). Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). When a claimant has both exertional (strength-related) and non-exertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a vocational expert. Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000) (citing Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988)).

**V.**

**THE ALJ'S DECISION**

The ALJ employed the five-step sequential evaluation process and concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (AR 28). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged disability onset date of September 21, 2009. (AR 23). At step two, the ALJ found that Plaintiff had the severe impairments of "status post gunshot wound to right leg, resulting surgery and placement of an intramedullary rod, resulting in reduced range of movement of right knee, ankle, and \\

leg; and obesity[.]" (Id.). In assessing Plaintiff's impairment, the ALJ relied on Plaintiff's medical records. (AR 24).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id.).

Next, at step four, the ALJ found that Plaintiff could perform the full range of light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b). (AR 24). However, Plaintiff would be restricted to occasional pushing/pulling with his right lower extremity and further restricted to occasional climbing of ramps and stairs, stooping, balancing, kneeling, crouching and crawling. (Id.). Moreover, Plaintiff would not be able to climb ladders, ropes, or scaffolds. Plaintiff would also need to use a cane to walk more than twenty feet from his work station. (Id.).

In reaching this conclusion, the ALJ relied on a number of factors. The ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms [were] not credible to the extent they [were] inconsistent with the above residual functional capacity assessment." (AR 25). Although Plaintiff admitted at the hearing that he could perform sedentary work, there was no evidence that he sought out employment in this category of work. (AR 26). Furthermore, the medical records before the ALJ indicated that Plaintiff did not

experience any complications from his January 2010 surgery.  (AR 26, 37, 215).  The record does not contain any treating physician opinions corroborating Plaintiff's alleged symptoms.  However, the state agency physician and consultative physician who reviewed his medical records and examined Plaintiff concluded that Plaintiff was capable of light level exertional work.  (Id. at 215 (citing the reports of Drs. Saeid and Ahmed)).

Based on these findings and the VE's testimony, the ALJ found, at step five, that Plaintiff could perform his past work as a car salesman.  (AR 27). The ALJ also concluded that given Plaintiff's age, education, work experience and residual function capacity, there existed other jobs in the national economy that Plaintiff could perform, such as cashier, office helper, order clerk and assembler.  (Id.).  Accordingly, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act.  (AR 28).

**VI.**

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole.  Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1097); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (citing Fair v.

13

1   Bowen, 885 F.2d 597, 601 (9th Cir. 1989)).

2

3        "Substantial evidence is more than a scintilla, but less

4   than a preponderance." Reddick, 157 F.3d at 720 (citing Jamerson

5   v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997)). It is "relevant

6   evidence which a reasonable person might accept as adequate to

7   support a conclusion." (Id.) (citing Jamerson, 112 F.3d at 1066;

8   Smolen, 80 F.3d at 1279). To determine whether substantial

9   evidence supports a finding, the court must "'consider the record

10  as a whole, weighing both evidence that supports and evidence

11  that detracts from the [Commissioner's] conclusion.'" Aukland,

12  257 F.3d at 1035 (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th

13  Cir. 1993)). If the evidence can reasonably support either

14  affirming or reversing that conclusion, the court may not

15  substitute its judgment for that of the Commissioner. Reddick,

16  157 F.3d at 720-21 (citing Flaten v. Sec'y, 44 F.3d 1453, 1457

17  (9th Cir. 1995)).

18

19                              **VII.**

20                          **DISCUSSION**

21

22       Plaintiff contends that the ALJ erred by failing to provide

23  legally sufficient reasons for finding his subjective testimony

24  regarding his pain and symptoms less than fully credible.

25  (Memorandum in Support of Plaintiff's Complaint ("MSPC") at 3).

26

27       The Court disagrees. For the reasons discussed below, the

28  Court finds that the ALJ's decision must be AFFIRMED.

1

2  **A.    The ALJ Provided Clear And Convincing Reasons For Finding**

3       **Plaintiff's Subjective Testimony Less Than Fully Credible**

4

5       An ALJ may reject a plaintiff's testimony if he makes an

6  explicit credibility finding that is "supported by a specific,

7  cogent reason for the disbelief." Rashad v. Sullivan, 903 F.2d

8  1229, 1231 (9th Cir. 1990) (internal citations omitted). Unless

9  there is affirmative evidence showing that the plaintiff is

10 malingering, an ALJ's reasons for rejecting the plaintiff's

11 testimony must be "clear and convincing." Lester v. Chater, 81

12 F.3d 821, 834 (9th Cir. 1995). Moreover, an ALJ may not

13 discredit a plaintiff's pain testimony and deny disability

14 benefits solely because the degree of pain alleged by the

15 plaintiff is not supported by objective medical evidence.

16 Bunnell v. Sullivan, 947 F.2d 341, 346-47 (9th Cir. 1991). If an

17 ALJ finds that a plaintiff's pain testimony is not credible, he

18 "must specifically make findings that support this conclusion."

19 Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001) (citation

20 omitted). If an ALJ makes only vague findings that the

21 plaintiff's statements are not consistent with the medical

22 evidence, he has not satisfied his obligation to supply specific,

23 clear, and convincing reasons for rejecting the plaintiff's

24 testimony. Vasquez v. Astrue, 572 F.3d 586, 592 (9th Cir. 2009).

25 An ALJ may consider many factors in assessing whether the alleged

26 severity of the plaintiff's symptoms is credible, including

27 "(1)ordinary techniques of credibility evaluation, such as the

28 claimant's reputation for lying, prior inconsistent statements

concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." Smolen, 80 F.3d at 1284.   Where an ALJ's credibility finding is "supported by substantial evidence in the record," the court may not second-guess the ALJ's conclusions and substitute its own judgment for that of the ALJ.   Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2001).

Here, the ALJ provided sufficiently specific and convincing reasons for finding Plaintiff's subjective pain and symptoms testimony less than fully credible.   First, Plaintiff admitted during the hearing before the ALJ that he could perform sedentary work if given the opportunity to do so.   (AR 26).   The ALJ asked Plaintiff if he could work, on a sustained basis, in a job that allowed him to remain seated most of the time.   (AR 56). Plaintiff responded that he could perform such a job.   (Id.). When Plaintiff's counsel asked Plaintiff if he could "maintain [a] job eight hours a day, [forty] hours a week[]" that involved sitting in a chair and answering phone calls, Plaintiff replied that he could perform such work.   (AR 60).   Plaintiff's counsel then asked Plaintiff the following question:

> "[I]f someone gave you a job today starting tomorrow
> sitting in a chair answering a phone.   They were going
> to pay you $25 an hour, two hours a break, two hours
> take a lunch, two hour take a break, two hours go home

16

1    and during those two hour intervals, you would be able
2    to just sort of move about, change position.   You
3    could stand and sit at your discretion but effectively
4    your only responsibility would be answering the phone.
5    You've got a hands free headset, you know, maybe ask
6    store hours, store locations or any other promotions
7    that they may give you to provide.  Do you think you
8    could, would you be able to do that?   Would you,
9    again, would you take up the opportunity?"

11   (AR 63-64).  For a third time, Plaintiff stated that he would
12   take that opportunity.  (AR 64).

14       However, when later pressed by his attorney, Plaintiff
15   testified that he could perform such work for only four hours per
16   day.  Thus, Plaintiff directly contradicted his earlier testimony
17   regarding his ability and willingness to engage in sedentary work
18   that allowed him to remain seated throughout an eight-hour
19   workday.  As discussed above, it is well within the province of
20   an ALJ to discount a plaintiff's credibility due to inconsistent
21   testimony, see Verduzco v. Apfel, 188 F.3d 1087, 1090 (9th Cir.
22   1999), and here, the ALJ properly concluded that Plaintiff's
23   contradictory statements regarding his exertional limitations
24   rendered his subjective pain testimony less than fully credible.

26       Second, the ALJ noted that medication resolved Plaintiff's
27   pain  and there was no evidence of adverse side effects.  (AR
28   26).  Plaintiff indicated at the hearing before the ALJ that

17

medication helped to mitigate his pain.  (AR 56).  Furthermore, Plaintiff completed a Pain Questionnaire on May 21, 2010, in which he confirmed the ameliorative effects of medication and the absence of adverse side effects.  (AR 155-56).  An ALJ may consider the effectiveness of pain medication and the lack of adverse side effects in determining the credibility of a plaintiff's subjective pain testimony.  See Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995).  Here, that Plaintiff was able to manage his pain with medication cuts directly against Plaintiff's claims that he was unable to search for employment due to crippling leg pain.

Third, the ALJ found that the medical evidence in the record did not support Plaintiff's subjective pain testimony.  To begin, Plaintiff did not experience any post-surgery complications.  (AR 26, 37, 215).  Indeed, Plaintiff testified that he "[c]ame through okay" after surgery on his right leg.  (AR 37).  Plaintiff's January 21, 2010 Discharge Summary confirmed that Plaintiff's "condition on discharge was good[,]" and although Plaintiff was deemed disabled after his surgery, Plaintiff's doctor(s) indicated that Plaintiff's disability was not expected to persist beyond April 2010.  (AR 238).

The ALJ also found that the reports by Dr. Ahmed and Dr. Saeid undermined Plaintiff's credibility.  Dr. Saeid conducted an in-person evaluation of Plaintiff on August 5, 2010.  (AR 200-07).  Based on his physical examination of Plaintiff and a review of Plaintiff's medical records, Dr. Saeid concluded that

18

Plaintiff was able to lift and carry twenty pounds occasionally and ten pounds frequently, and could stand, walk, or sit for six hours in an eight hour day. (AR 204). On August 16, 2010, Dr. Ahmed reviewed Plaintiff's medical records and found that Plaintiff was "doing relatively well[,]" and that "[t]he x-rays show healed [fracture] in both bones." (AR 215). Based on his review of Plaintiff's records, Dr. Ahmed assigned Plaintiff a light RFC, finding that Plaintiff could lift and carry twenty pounds occasionally and ten pounds frequently, and stand, walk, or sit for six hours in an eight-hour day. (AR 214). Thus, he concluded that Plaintiff was capable of greater physical activity than that alleged by Plaintiff, and the record lacked any treating or examining physician opinions contradicting these findings.

Finally, the ALJ found no medical support for Plaintiff's claim that he needed to elevate his leg to the extent alleged. (AR 26). Plaintiff testified that he elevated his leg approximately two hours per day. (AR 60). Although Plaintiff's December 2009 and January 2010 Discharge Summaries instructed Plaintiff to elevate his leg, (AR 193-194, 237-238), Plaintiff's doctors did not anticipate that he would remain disabled beyond April 2010. Thus, there was no medical evidence that Plaintiff was required to regularly elevate his leg after April 2010.

While an ALJ may not rely solely on objective medical evidence to discredit a Plaintiff's subjective pain testimony, Bunnell, 947 F.2d at 346-347, the lack of supporting medical

19

1   evidence, taken together with other factors, may justify finding
2   that a claimant's subjective testimony is less than fully
3   credible.  See, e.g., Barnhart, 278 at 958-60 (ALJ properly
4   considered the lack of objective medical evidence, as well as
5   other factors, in evaluating the credibility of a plaintiff's
6   subjective testimony regarding the severity of her impairments
7   and pain); Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595,
8   599-600 (9th Cir. 1999) (same).  Here, the ALJ set forth a number
9   of specific factors that in aggregate were sufficient to
10  discredit Plaintiff's subjective pain testimony.  Accordingly,
11  the Court finds that the ALJ presented clear and convincing
12  reasons supported by substantial evidence for finding Plaintiff's
13  subjective testimony less than fully credible.  Thus, remand is
14  not required and the ALJ's decision must be affirmed.
15  \\
16  \\
17  \\
18  \\
19  \\
20  \\
21  \\
22  \\
23  \\
24  \\
25  \\
26  \\
27  \\
28  \\

# VIII.

## CONCLUSION

Consistent with the foregoing, IT IS ORDERED that Judgment be entered AFFIRMING the decision of the Commissioner. The Clerk of the Court shall serve copies of this Order and the Judgment on counsel for both parties.

DATED:   June 6, 2014                      _____/S/_____
                                           SUZANNE H. SEGAL
                                           UNITED STATES MAGISTRATE JUDGE